IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LUCIENA S. GRANT-FLETCHER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-13-3505 |
| COLLECTO, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Plaintiff Luciena S. Grant-Fletcher, on behalf of herself and others similarly situated, sued the Defendant Collecto, Inc., doing business as EOS CCA, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *at seq.*, and the Maryland Consumer Debt Collection Act, Md. Code, Com. Law § 14-201, *et seq.* Pending before this Court is the Defendant's Motion to Compel Arbitration and Stay Further Proceedings (ECF No. 15). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the Defendant's Motion is GRANTED.

## BACKGROUND

Plaintiff Grant-Fletcher entered a contract for cellular telephone service with Cingular Wireless in 2004. Compl. ¶¶ 1-2; Pl.'s Opp. 7, ECF No. 18. In or about 2007, Cingular became AT&T Wireless. Grant-Fletcher entered a further contract with AT&T on February 1, 2009. *See* Wireless Service Agreement, ECF No. 15-3. The Plaintiff does not deny entering the 2009 contract with AT&T. The Plaintiff argues, however, that the signature on the confirmation page, bearing her telephone number "2402812287" and attached to the

Defendant's Motion, is not hers.  Affidavit of Luciena Grant-Fletcher, ECF No. 18-1; Wireless Service Contract, ECF No. 15-3.  She states that she does not recall whether she signed the electronic signature pad or even visited an AT&T store in 2009, but that she "may have" electronically signed in the store with her daughter who was a minor and had a cellular phone on the same account at the time.  Pl.'s Aff., ECF No. 18-1.

The contract specifically references "AT&T's current Terms of Service #FMSTCT02090123E including its binding arbitration clause," contains an acknowledgement that the Terms of Service were provided separately to the Plaintiff before the contract was signed, and contains an express agreement to be bound by those "separate Terms of Service."  ECF No. 15-3.  The Terms of Service include a section entitled "**DISPUTE RESOLUTION BY BINDING ARBITRATION**."  The document instructs the customer to "**Please read carefully.  It affects your rights**" and, in a plain language summary, provides in pertinent part:

> **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of courts of general jurisdiction.**  Arbitration is more informal than a lawsuit in court.  Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts.  Arbitrators can award the same damages and relief that a court can award.  **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.**  For any non-frivolous claim that does not exceed $75,000, AT&T will pay all costs of the arbitration.  Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court.

Terms of Service, ECF No. 15-4.  The arbitration clause itself states in pertinent part:

> (1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
> - claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;
> - claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);
> - claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
> - claims that may arise after the termination of this Agreement.
>
> References to "AT&T," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us. . . . **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive the termination of this Agreement.
>
> * * *

ECF No. 15-4 (all emphasis in original). The above provisions, collectively, comprise the "Arbitration Agreement" at issue in this case. The Plaintiff states that she was not given a hard copy of the Arbitration Agreement or other documentation by Cingular or by AT&T.

In approximately April or May of 2009, as a result of a billing and service dispute, Grant-Fletcher terminated her account. Compl. ¶ 6; Pl.'s Aff., ECF No. 18-1. AT&T claimed that the Plaintiff owed $879.59 on her bill. Compl. ¶ 7; AT&T Wireless Statement for 07/10/12 – 08/09/12, ECF No. 18-4. The Plaintiff disputes the amount of her account balance, Compl. ¶ 8, and did not make further payments. On August 20, 2012, AT&T sold the Plaintiff's debt to non-party US Asset Management. Aff. of AT&T Mobility, Inc., ECF No. 15-2; Affidavit of John Burns ¶ 5, ECF No. 15-5. US Asset Management is a wholly-

owned subsidiary of Defendant Collecto. Def.'s Mem. 3, ECF No. 15-1. US Asset Management then directed Collecto to collect the Plaintiff's account. Burns Aff. ¶¶ 6-7.

The Plaintiff alleges that Collecto, doing business as EOS CCA, attempted to collect the debt from her. *See* ECF No. 18-5  In the process, she alleges that Collecto "added additional, unauthorized and illegal charges to [her] bill; Defendant added $209.94 in interest charges which were not authorized by contract, and Defendant added a collection fee of $158.33 to the bill, when no contract authorized the charge and when AT&T had not incurred any such costs." Compl. ¶ 11. Collecto claimed that the total amount due was $1,240.86. *Id.* ¶ 23. Grant-Fletcher notes that the "Fees/Coll[ection] Costs" in the amount of $158.33 is equal to 18% of the alleged principal balance due. *Id.* ¶ 24. She further asserts that AT&T continued to send her bills that did not charge any interest or collection fees. *Id.* ¶¶ 12-13; AT&T Bill, ECF No. 18-4.

On September 30, 2013, the Plaintiff filed a class action complaint in the Circuit Court for Howard County, Maryland, alleging violations of the Fair Debt Collection Practices Act and the Maryland Consumer Debt Collection Act. The Plaintiff defines the class of similarly situated consumers as:

> All persons who reside in Maryland, the District of Columbia and 19 other states listed in the AT&T on-line service agreement number FMSTCT02090123E who: (a) had wireless service agreements with AT&T; (b) entered into the agreements primarily for personal, household, or family purposes; (c) failed to make all contract payments to AT&T, and; (d) were contacted by EOS CCA in an attempt to collect amounts allegedly due on their AT&T accounts, on or after October 1, 2012.

Compl. ¶ 15. The Complaint contains allegations that Collecto added interest charges that "were not authorized by contract" and collection fees "when no contract authorized the

charge." Compl. ¶ 11; *see also id.* ¶ 14 ("In written communications with the Plaintiff, the Defendant attempted to collect from the Plaintiff sums that she did not legitimately owe and which AT&T may not impose as a matter of contract and a matter of law, and which Defendant is barred from collecting."), ¶ 29 ("[T]he attempted inflation of account balances is unauthorized by the contract between the debtor and the original creditor."), ¶ 36 ("Defendant's letters and other communications with the subclass [of Maryland plaintiffs] relied on improperly inflated debts that attempted to impose costs and fees not authorized by contract and not authorized by law."). Grant-Fletcher also alleges that Collecto charged fees in excess of the limits established in Section 14-1315 of the Commercial Law Article of the Annotated Code of Maryland. *Id.* ¶ 28.

The Defendant removed the case to this Court on the basis of federal question jurisdiction. 28 U.S.C. §§ 1331, 1441. The Defendant then moved to stay this case and compel arbitration.

**STANDARD OF REVIEW**

This Court has previously noted that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, ___ F. Supp. 2d ___, 2013 WL 5973151, at *5 (D. Md. 2013) (citing *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)). Where, as here, the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment. *Id.* at *5; *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011). Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## **ANALYSIS**

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d

6

373, 377 (4th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986)).  The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* requires that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2; *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("This text reflects the overarching principle that arbitration is a matter of contract." (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2776 (2010)).  The Supreme Court has recently noted that arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740 (2011) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (internal quotation marks omitted)).  The FAA also requires that a federal court stay any proceedings that present a controversy which the parties have agreed to arbitrate. *Id.* at § 3.  Moreover, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Despite this presumption, agreements to arbitrate are fundamentally about private choice. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v.*

*Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Federal courts have the authority to compel arbitration, but in making that determination this Court is mindful that its role is limited to determining the "question of arbitrability," or the "gateway dispute about whether the parties are bound by a given arbitration clause." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

The United States Court of Appeals for the Fourth Circuit has held that a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001). State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. ___, 131 S. Ct. at 1745-46; *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th 2005). In Maryland, "the law of the jurisdiction where the contract was made ["*lex loci contractus*"] controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988). As this case involves the issue of the validity of the arbitration agreement and because the contract was entered into by the parties in Maryland, Maryland law governs.

Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid

contract.  *Hill*, 412 F.3d at 543; *see also Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003).  Moreover, "an arbitration clause is a severable contract which is enforceable independently from the contract as a whole." *Holmes v. Coverall N. Am., Inc.*, 649 A.2d 365, 370 (Md. 1994); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. ___ , 130 S. Ct. 2847, 2858 (2010) (Under "the FAA . . . courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself."). To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision.  *See Cheek*, 835 A.2d at 664-65; *see also Hill*, 412 F.3d at 543.  As with any contract, the arbitration provision must be supported by adequate consideration in order to be valid and enforceable.  *See Cheek*, 835 A.2d at 661.[1]

### I.     The Arbitration Agreement Is Valid and Enforceable

In her Opposition to the Defendant's Motion to Compel Arbitration, the Plaintiff does not claim that the Arbitration Agreement, by its terms, is unenforceable because it does not mutually bind the parties or is unconscionable from a procedural or substantive standpoint.  Rather, the Plaintiff argues that she never agreed to arbitrate any dispute with AT&T and that even if she had, Collecto cannot enforce any such agreement.

It is agreed that there is a dispute between the parties over the interest, fees, and collection charges assessed by Collecto, that the wireless contract transaction relates to

---

[1] The United States Court of Appeals for the Fourth Circuit, in affirming this Court's denial of a motion to dismiss or stay pending arbitration, recently held that *Cheek* retains its force and is not preempted by the FAA in light of the Supreme Court's decision in *Concepcion*.  *See Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 612 (4th Cir. 2013) ("The Supreme Court has never held that the FAA preempts state law rules requiring that arbitration provisions themselves contain consideration (*i.e.*, that they not be illusory), and it would require a substantial extension of existing precedent to do so here.").

interstate commerce, and that Grant-Fletcher refuses to arbitrate. Therefore, only the second prong of the test set forth in *Whiteside v. Teltech Corporation* is at issue: whether the Arbitration Agreement covers the dispute. 940 F.2d 99, 102 (4th Cir. 1991).

### A. The Plaintiff Is Bound by the Arbitration Agreement

The Plaintiff first contends that there is no valid Arbitration Agreement that binds her because Collecto has not established that she agreed to the Terms of Service #FMSTCT02090123E containing the Arbitration Agreement. Specifically, she argues that she did not receive or have access to the Arbitration Agreement and that the confirmation document attached to the Defendant's Motion does not bear her signature.

Grant-Fletcher entered at least two successive contracts for cellular phone service with Cingular and AT&T. After entering the February 2009 Wireless Service Agreement and using AT&T service for the next several months, she alleges that she canceled her contract in April or May of 2009. Her claims against the Defendant specifically rely on her entering the contract that contains the Terms of Service. *See, e.g.*, Compl. ¶ 15 (defining the putative class in part as persons who entered wireless service agreements with AT&T snd referencing the online Terms of Service #FMSTCT02090123E). Despite the Plaintiff's contention that the electronic signature on the Wireless Service Agreement does not resemble hers, her hyperbolic argument that this amounts to a "tremendous gap in the evidence" is insufficient to show that she did not assent to the terms of a contract related to her telephone number. The document bears the telephone number on her account—"2402812287." ECF No. 15-3. Indeed, she acknowledges that she "may have" visited an AT&T store and signed electronically in February 2009, and does not provide any other possible explanation for how

the new contract could have been activated without her signature. In any event, the contract provides that if the customer does not sign electronically, he or she may activate the phone by calling a toll free number and following certain prompts. ECF No. 15-3. Even viewing the facts in the light most favorable to the Plaintiff, in order to use the phone service that was the subject of the contract, she would have had to acknowledge acceptance of those Terms by one means or another. *See Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979, 987 (N.D. Ill. 2009) ("No [defense] affiant directly states that [plaintiff] checked the box stating that 'I have read and agree to the AT&T Service Agreement.' But . . . one may reasonably infer that someone checked that box— . . . if a customer does not check the box, he may not activate his iPhone.").

In addition, this Court concludes that as of February 2009, any repeat customer of a wireless service provider reasonably would have known that by agreeing to a contract and using the service, the customer agrees to a litany of provisions that affect the parties' legal rights.[2] The Wireless Service Agreement, which the Plaintiff acknowledges she entered, clearly gives notice that the Terms of Service contain an arbitration agreement by which both parties are bound, and states that the document was provided to her and also was otherwise available for her review. The fact that Grant-Fletcher may have chosen not to access or read the language of the Arbitration Agreement does not render it invalid or non-binding. *Dieng*

---

[2] Grant-Fletcher also argues that any agreement to the Terms of Service in this case is akin to an unenforceable "click wrap" or "browser wrap" agreement. Pl.'s Opp. 8, ECF No. 18-1. Click wrap and browser wrap agreements require a customer to accept certain terms before it is possible to use a product or website. Her argument is unavailing to her Opposition to Collecto's Motion. Without deciding whether the agreement in this case is a click wrap or browser wrap agreement, the evidence shows that the Plaintiff was made aware of, and had access to, the Terms of Service containing the arbitration clause. Therefore, she agreed to be bound by the Arbitration Agreement at issue.

*v. College Park Hyundai*, No. DKC-09-0068, 2009 WL 2096076, at *5 (D. Md. July 9, 2009) (holding that plaintiffs were bound to an agreement they "did not have or take the time to read and understand"). Moreover, Grant-Fletcher expressly relies on the Wireless Service Agreement and references this specific version of the Terms of Service in her Complaint. This undercuts any argument that the Arbitration Agreement was not available to her.[3] In light of the foregoing, no further independent evidence regarding the availability of the terms and conditions in the AT&T store or online at the time that the Plaintiff entered the contract in February of 2009 is necessary.[4] In sum, there is sufficient evidence to conclude that the Plaintiff had notice of, and access to, the Arbitration Agreement, and agreed to be bound by it.

### B. Collecto Can Enforce the Arbitration Agreement

The Plaintiff next argues that even if she did agree to be bound by the Arbitration Agreement, the Defendant cannot enforce it against her. It is well settled that a non-party to an arbitration agreement may, in certain circumstances, compel arbitration if the language of clause covers the claims against it. *Am. Banker's Grp. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006); *Davidson v. Becker*, 256 F. Supp. 2d 377, 382 (D. Md. 2003). Pursuant to the plain

---

[3] The Plaintiff focuses much of her argument on the unavailability of the "actual Cingular Service Summary," another document referenced in the signature confirmation document. This argument is a red herring. The relevant document is the Terms of Service, which contains the Arbitration Agreement, and upon which the Plaintiff specifically relies in her Complaint.

[4] The case upon which the Plaintiff relies, *Trujillo v. Apple Computer, Inc.*, is distinguishable from this case. 578 F. Supp. 2d 979 (N.D. Ill. 2008). First, that case, interpreting Illinois law, mainly concerned a dispute between a customer and AT&T over a phone purchased in an Apple store that did not have the same procedures as an AT&T store. Second, in *Trujillo*, the defendant provided the court with several sham affidavits purporting to attest to procedures that were not actually employed. *Id.* at 983. This Court concludes that in this case, where the contract was entered at an AT&T store, the documents speak for themselves and the Defendant's Motion does not suffer from the same failures of proof.

language of the Arbitration Agreement, the clause applies to "subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements." ECF No. 15-5. The Defendant states that AT&T assigned the debt to US Asset Management, which then instructed Collecto to collect the debt from the Plaintiff.

The Plaintiff argues that the affidavits of representative of AT&T and John Burns of Collecto are insufficient to show that her debt was assigned to US Asset Management. *Kasolo v. NCSPLUS, Inc.*, No. 10 C 1643, 2011 WL 2582195 (N.D. Ill. June 27, 2011) (sustaining objection to affidavit for violation of hearsay rule and best evidence rule). In *Kasolo*, the court ruled at the summary judgment stage that an affidavit was not admissible to prove the amount of the debt, not that a debt was owed. *Id.* at *1. In this case, the Plaintiff has attached to her Opposition a bill from AT&T showing an $879.59 balance. While she has disputed that this is the exact amount she owed, her claims do not rest on AT&T overcharging her or improperly assigning the debt for collection. Further distinguishing this case from *Kasolo*, Burns's affidavit, ECF No. 15-5, is based on personal knowledge of the debt at issue. Even though the AT&T representative's affidavit, ECF No. 15-2, is based in part on records that are not provided, this Court concludes that no other document need be produced to consider the facts asserted. *See Whitman v. Capital One Bank, N.A.*, No. WMN-09-1737, 2009 WL 4018523, at *2 n. 1 (D. Md. Nov. 19, 2009) (holding that proof of assignment was not necessary when debt was owned by different entity than at time agreement was entered due to internal restructuring of the creditor); *see also U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 927 n.8 (4th

Cir. 1995) (evidence considered at summary judgment stage need not be strictly admissible, but only "materials capable of being reduced to admissible evidence at trial").

Notably, the Plaintiff does not contest that her debt was actually assigned to US Asset Management. Her argument that the rights under the Arbitration Agreement do not accrue to US Asset Management is more accurately characterized as an argument on the merits. The Plaintiff argues that because the August 2012 assignment was more than three years after she terminated her AT&T contract in April or May of 2009, the statute of limitations for a breach of contract claim had run, and thus the purported assignment did not give US Asset Management, or any other entity, the right to collect the debt from her or enforce any other contract terms. The Plaintiff's argument on this point asks this Court to look beyond the four corners of the Arbitration Agreement at issue and inquire into the merits of her claims. To do so at this stage would be improper; this Court's only task is to decide whether this dispute is arbitrable. *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 181 (4th Cir. 2013) (general contract defenses applicable to the entire contract, not specific to the arbitration clause, are reserved for the arbitrator); *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 835 A.2d 656, 664-65 (Md. 2003) (limiting judicial review to the four corners of the arbitration clause); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (noting the district court's limited gatekeeper function in deciding question of whether parties are bound to arbitrate). As a whole, the affidavits of AT&T and US Asset Management are sufficient to establish that US Asset Management is an "assign" covered by the Arbitration Agreement in the Terms of Service. Any issues as to the merits of the claims, including any statute of limitations issue must be resolved by the arbitrator.

Having concluded that US Asset Management is the assignee as to Grant-Fletcher's debt, the issue remains whether the Arbitration Agreement is enforceable by Collecto. The Defendant argues that it may enforce the Arbitration Agreement based on principles of agency. *Horneffer v. St. Joseph Med. Ctr.*, No. MJG-11-410, 2012 WL 983782, at *4 (D. Md. Mar. 21, 2012) (quoting *Int'l Paper Co. v. Scwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000) (noting five theories that may provide a basis for enforcing an arbitration clause: "1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel.").

The Arbitration Agreement covers "subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns." The provision also states that it is to be interpreted broadly, and a court resolving any ambiguity as to the scope of arbitrability must do so in favor of arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). Under Maryland law, an agency relationship may be established by written agreement or inference. *Integrated Consulting Servs., Inc. v. LDDS Commc'ns, Inc.*, 996 F. Supp. 470, 474 (D. Md. 1998) (citing *Patten v. Bd. of Liquor License Comm'rs for Baltimore City*, 667 A.2d 940 (Md. Ct. Spec. App. 1995)). Because no written agreement has been produced, in order to establish an agency relationship, Collecto must show that "1) the agent was subject to the principal's right of control; 2) the agent had a duty to primarily act for the benefit of the principal; and 3) the agent held the power to alter the legal relations of the principal." *Id.* (citing *Schear v. Motel Management Corp.*, 487 A.2d 1240 (Md. Ct. Spec. App. 1985) (quoting Restatement (Second) of Agency §§ 12-14 (1958))).

There is adequate evidence in this case to reasonably infer that Collecto acted as an agent of US Asset Management. The Defendant asserts that US Asset Management directed Collecto, as its agent, to collect the Plaintiff's account. Burns Aff. ¶¶ 6-7. In particular, the letter attached to the Plaintiff's Opposition, ECF No. 18-5, makes clear that Collecto, doing business as EOS CCA, acted on behalf of its client, US Asset Management, to collect a debt originally owed to AT&T for US Asset Management's benefit.[5] Moreover, the same document evidences Collecto's right, subject to US Asset Management's control, to bind US Asset Management by accepting a settlement amount to satisfy the debt. *Id.* ("Our client has authorized the following resolution to your balance as noted above: Lump Sum Settlement of 1 payment of **$310.22** to be paid no later than **06/15/13**. . . . We are not obligated to renew this offer."). Accordingly, an agency relationship between Collecto and US Asset Management can be inferred, and Collecto may enforce the Arbitration Agreement.

### C. The Arbitration Agreement Covers the Plaintiff's Claims

Finally, the Plaintiff argues that her two statutory claims are not based on the contract, and thus are outside the scope of the Arbitration Agreement. The fact that the Plaintiff's claims are for violations of state and federal statutes, and not for breach of contract, does not affect arbitrability. *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 n.6

---

[5] The primary cases upon which the Plaintiff relies, for the proposition that debt collectors are not agents under arbitration agreements, are distinguishable from this case. *Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F. Supp. 2d 640, 646 (E.D. Va. 2006); *Bontempo v. Wolpoff & Abramson, L.L.P.*, No. 06-745, 2006 WL 3040905 (W.D. Pa. Oct. 24, 2006); *Cohen v. Wolpoff & Abramson, L.L.P.*, No.08-1084 SRC, 2008 WL 4513569 (D.N.J. Oct. 2, 2008). In those cases, the arbitration clause applied to agents, but also separately defined debt collectors elsewhere. As to debt collectors, the arbitration provision provided that it only applied if the principal was named as a co-defendant. No such provision is at issue in this case. Interpreting the Arbitration Agreement broadly, as this Court must, debt collectors acting as agents are covered regardless of whether the original creditor is named as a co-defendant in a claim based on the debt collector's actions.

(4th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000)). For one thing, the Arbitration Agreement expressly covers statutory claims related to the contract. ECF No. 15-3 ("AT&T and you agree to arbitrate **all disputes and claims** between us" including "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory"). Additionally, although no breach of contract claim is raised, the causes of action asserted by Grant-Fletcher arise out of the collection of a debt on the contract containing the Arbitration Agreement. Compl. ¶¶ 11, 15, 29 & 36. Therefore, keeping in mind the broad federal principle favoring arbitration, the claims pursuant to the Fair Debt Collection Practices Act and the Maryland Consumer Debt Collection Act are squarely within the scope of the valid Arbitration Agreement that is enforceable by Defendant Collecto.[6] Accordingly, the Defendant's Motion to Compel Arbitration is granted.

## II.     The Plaintiff Waived the Right to Bring a Class Action

The Arbitration Agreement also contains a waiver of the right to bring a class action suit or class arbitration. Because the Arbitration Agreement is valid, binding on the Plaintiff, and enforceable by the Defendant, arbitration may proceed only on an individual, not class, basis.

## III.    The Case Must Be Stayed

Because the parties agree to arbitrate all claims in this case pursuant to the Terms of Service of the contract between Grant-Fletcher and AT&T, as enforced by Collecto, the

---

[6] Because the arbitration agreement is enforceable by Collecto based on agency principles and the dispute in this case arises out of the contract containing the Arbitration Agreement, this Court need not address whether the Defendant's alternate theory of equitable etoppel applies.

entire action must be stayed pending arbitration.  9 U.S.C. § 3.

## **CONCLUSION**

For the reasons stated above, Defendant Collecto, Inc.'s Motion (ECF No. 15) is GRANTED.

A separate Order follows.


Dated:  May 9, 2014                             /s/
                                                Richard D. Bennett
                                                United States District Judge